UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
SOLENT FREIGHT SERVICES, LTD. INC.,
d/b/a/ EGGSBYAIR,

                      Plaintiffs,

-against-

CARLOS ALBERTY, OMNI EXPORT SERVICES,
INC., JOHN KHODOV, and DELEX, INC.,

                      Defendants.
-----------------------------------------------------------------X

**MEMORANDUM & ORDER**

**11-CV-4375 (NGG) (RLM)**

NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiff Solent Freight Services, Ltd. Inc. brought this action against Carlos Alberty, Omni Export Services, Inc. ("Omni"), (collectively, the "Omni Defendants"), John Khodov, and DelEx, Inc. ("DelEx") (collectively, the "DelEx Defendants") alleging violations of federal antitrust law, defamation, tortious interference with business relations, and civil conspiracy arising from Defendants' actions in the freight forwarding business. (Am Compl. (Dkt. 17).) Omni Defendants have moved to dismiss the Amended Complaint under Federal Rules of Civil Procedure 12(b)(1) and (b)(6) for lack of subject matter jurisdiction and failure to state a claim. (Omni Mot. to Dismiss (Dkt. 26).)

For the reasons stated below, Omni Defendants' motion is GRANTED.

I.     **BACKGROUND**

    A.     **Factual Background**

For the purposes of contemplating Omni Defendants' motion to dismiss, the court accepts as true the following facts from Plaintiff's Amended Complaint. This antitrust action has been brought by Plaintiff, a freight forwarder, against Omni, a competitor freight forwarder. (See Am.

1

Compl.) Plaintiff has also sued Carlos Alberty, Omni's principal; DelEx, Omni's New York agent; and John Khodov, DelEx's Director of Logistics. (See id. ¶¶ 2-8.) The relevant product market for the alleged antitrust violations is the "logistics and transportation of Hatching Eggs for export originating from the East Coast of the United States." (Id. at 16.)

Plaintiff is a New York corporation formed in 1994. (Id. ¶¶ 1, 22.) Plaintiff is in the business of "freight forwarding," which involves arranging logistics and transportation for the shipment of products, operating primarily out of the East Coast. (Id. ¶¶ 16, 22, 24.) This often includes negotiating with cargo shippers for favorable worldwide shipping rates for its clients.[1] (Id. ¶ 24.) Over the course of its business, Plaintiff has offered freight forwarding services for "a variety of different products." (Id. ¶ 22.)

Omni is a Florida corporation formed in 1995. (Id. ¶¶ 2, 23). Omni operates freight forwarding services for hatching eggs[2] originating from the East Coast of the United States. (Id. ¶ 23.) DelEx is the New York agent for Omni and Alberty, and routinely arranges logistics and cargo shipments on their behalf. (Id. ¶¶ 4-5.) Omni maintains 75% or more of the market for freight shipping of hatching eggs originating from the East Coast. (Id. ¶ 25.)

In 2011, Plaintiff decided to start freight forwarding hatching eggs.[3] (Id. ¶¶ 32-35.) By entering the freight forwarding of hatching eggs market, Plaintiff "decided to compete directly" with Omni. (Id. ¶ 35.) Besides Plaintiff and Omni, there are four other companies that offer freight forwarding of hatching eggs. (Id. ¶ 26.) These four companies comprise about 15% of the market. (Id.) There are eight companies in the United States that produce and sell hatching

---

[1] A helpful characterization of this business is that freight forwarders are "travel agents" for cargo. (See Omni Mem. (Dkt. 28) at 2.)

[2] Hatching eggs, according to the Amended Complaint, are "poultry hatching eggs." (Am. Compl. ¶ 15.)

[3] Plaintiff does not specify whether it began shipping exclusively hatching eggs, or simply added hatching eggs to the variety of different products it already shipped.

eggs for export, and five of the eight ship the majority of their products using Omni's freight forwarding services. (Id. ¶ 27.)

### B. Business Dealings Giving Rise to Plaintiff's Claims

Plaintiff's claims stem from two of Omni's business dealings: (1) an arrangement between Omni and Morris Hatchery ("Morris"), an egg hatchery; and (2) an email Alberty sent on behalf of Omni to several cargo shippers with whom Plaintiff had previous business relationships. (See Am. Compl.)

#### 1. *Omni's Agreement with Morris*

Diane Alberty—Defendant Alberty's wife—works for the President of Morris. (Id. ¶ 31.) This relationship has allowed Morris to develop an arrangement with Omni wherein Omni gives Morris confidential shipping information[4] on purchasers of hatchery eggs that Omni receives in the course of providing freight forwarding for other hatcheries. (Id.) In return for the information on its competitors' customers, Morris requires all of its customers to use Omni's freight forwarding services. (Id.)

When Plaintiff entered the market, several small egg hatcheries approached it about its services and "expressed displeasure with Omni." (Id. ¶¶ 32-34.) The hatcheries complained that after they used Omni for shipping, their customers would receive calls from Morris. (Id. ¶ 34.) Plaintiff alleges that this arrangement is set up so that Omni can monopolize the market for freight forwarding of hatching eggs, and that it has resulted in artificially high prices for hatching eggs and the shipping of hatching eggs in the relevant product market. (Id.)

---

[4] This shipping information includes the name of the purchaser and the type and quantity of eggs being purchased. (Id.)

3

        2.    *Omni's Email*

After recently entering into the market for shipping hatching eggs, Plaintiff offered its services to a customer and negotiated with KLM Cargo for favorable shipping rates. (Id. ¶¶ 35-37.) According to Plaintiff, this customer was a former customer of Omni's. (Id. ¶ 38.) KLM erroneously listed the shipping contents as flowers, rather than hatching eggs, but corrected the mistake before shipping. (Id. ¶ 42.) Plaintiff alleges that, at some point, Omni and Alberty were made aware that Plaintiff was "undercutting [Omni's] rates and undermining its price fixing and monopolistic conspiracy," and that as a consequence, Omni sought to preserve its monopoly by having KLM and other shippers increase the rates they offered to other freight forwarders for shipment of hatching eggs. (Id. ¶ 43-44.) Thereafter, KLM raised the rates almost six-fold on Plaintiff's new customer. (Id. ¶ 45.) Plaintiff avers that KLM's action was a direct result of Omni's efforts to preserve its monopoly. (Id.)

Shortly thereafter, on April 6, 2011, Defendant Alberty authored and sent an email on behalf of Omni to many of Plaintiff's contacts at airlines and shippers, including KLM. (Id. ¶ 46.) The email, reprinted in full in the Amended Complaint, advised the recipients that Plaintiff was trying to enter the business of freight forwarding hatching eggs, and was attempting to secure lower rates for its customers by misleading the shippers about the cargo they would be shipping. (Id. ¶ 47.) The email says of Plaintiff and Plaintiff's trade name entity "Eggsbyair," "[h]opefully you will make [it] more difficult for them to ship or just close your doors to them, they are up to no good and are lying to each of you in order to get you to move their cargo." (Id.) Khodov, on behalf of DelEx, forwarded Omni's email to several of Plaintiff's shipping contacts. (Id. ¶ 49.) Shortly after the contacts received the email, Plaintiff was "advised that certain cargo owners would no longer ship [Plaintiff's] cargo." (Id.)

4

### C.   Procedural Background

Plaintiff brings six causes of action arising from the two business dealings described above: (1) defamation per se; (2) tortious interference and unfair competition; (3) civil conspiracy; (4) per se violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, for unreasonable and illegal restraint of trade; (5) violation of Section 1 under the "rule of reason"; and (6) violation of Section 2 of the Sherman Act, 15 U.S.C. § 2, for an unlawful monopoly. (See Am. Compl.) Plaintiff pleads that the court has original subject matter jurisdiction over the federal antitrust claims, and supplemental jurisdiction over the remaining state law claims. (See id. ¶¶ 9-12.) Plaintiff amended its Complaint as a matter of right to add details about the relevant market, and enhance its allegations relating to Omni's business dealings. (See Compl.; Am. Compl. ¶¶ 31, 59-71.)

Omni Defendants have moved to dismiss Plaintiff's Amended Complaint.[5] (Omni Mot. to Dismiss.) They argue that the court should dismiss the federal antitrust claims for failure to state a claim and should decline to exercise supplemental jurisdiction over Plaintiff's remaining state law claims.[6] (See Omni Mem. (Dkt. 28).) Plaintiff opposes this motion. (See Pl. Mem. (Dkt. 31).)

## II.   PLAINTIFF'S ANTITRUST CLAIMS

Omni Defendants argue that Plaintiff's antitrust claims all fail as a matter of law because

---

[5]   After the court granted Omni Defendants leave to file a motion to dismiss Plaintiff's Amended Complaint, DelEx Defendants requested leave to move to dismiss Plaintiff's Amended Complaint against them. (Dkt. 19.) Because DelEx Defendants raised substantially different issues than those raised in Omni Defendants' motion, the court denied DelEx Defendants' request. (Jan. 12, 2012, Order.) After a pre-motion conference with the court, DelEx Defendants answered Plaintiff's complaint and cross-claimed against Omni Defendants for indemnification and contribution. (Dkt. 22).

[6]   Omni Defendants requested oral argument on their motion. (Dkt. 33.) The court denied Omni Defendants' request without prejudice and stated that it would advise the parties if it were to determine that oral argument would be helpful. (March 22, 2012, Order (Dkt. 34).) The court has determined that this motion can be resolved without oral argument.

Plaintiff lacks antitrust standing to allege harm to the hatching eggs market, and has failed to plead facts alleging harm to the market for freight forwarding of hatching eggs, as required to bring such antitrust claims. (See Omni Mem.) For the reasons explained below, the court agrees.

### A. Legal Standards

#### 1. Fed. R. Civ. P. 12(b)(6) Motion to Dismiss

"To survive a motion to dismiss, a claim must contain sufficient factual matter, accepted as true, to 'state a claim for relief that it plausible on its face.'"[7] Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). To determine whether a claim survives, the court must be mindful of two important principles. First, claims that are "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" need not be accepted as true. Id. Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. A plausible claim must have "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Plausibility "is not akin to a probability requirement," but requires "more than a sheer possibility that a defendant has acted unlawfully." Id. (internal quotation marks omitted).

---

[7] Plaintiff seems to suggest a lower standard that would allow the court to "look beyond the well-pled allegations when assessing [the] complaint." (Pl. Mem. at 6.) The appropriate standard, however, is the Twombly standard, which arose from an antitrust case and has since been held to apply to cases more broadly. In re Elevator Antitrust Litig., 502 F.3d 47, 50 (2d Cir. 2007); see also Habitat, Ltd. v. The Art of Muse, Inc., No. 07-CV-2883 (DRH), 2009 WL 803380, at *3 (E.D.N.Y. Mar. 25, 2009). Twombly requires more than mere allegations of unlawful behavior—it requires "enough facts to 'nudge [Plaintiffs'] claims across the line from conceivable to plausible." Elevator Antitrust, 502 F.3d at 50. Plaintiff also relies on the proposition that judges should be cautious before dismissing an antitrust complaint in advance of discovery. (Pl. Mem. at 7.) As the Twombly court explained, however, this must be balanced by the principle that "a district court must retain the power to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed," and must decline to send parties into discovery when there is no reasonable likelihood that the plaintiffs can construct a claim from the facts alleged in the complaint. Twombly, 550 U.S. at 558 (quoting Associated Gen. Contractors of Cal., Inc. v. Carpenters, 459 U.S. 519 (1983)).

6

*2.	Antitrust Claims*

To adequately plead an antitrust claim, a plaintiff must: "(1) define the relevant market, (2) allege an antitrust injury, and (3) allege conduct in violation of the antitrust laws." N. Y. Medscan LLC v. N. Y. Univ. Sch. of Med., 430 F. Supp.2d 140, 145 (S.D.N.Y. 2006). In addition, a private plaintiff suing under federal antitrust laws must demonstrate antitrust standing, which is distinct from and additional to the constitutional standing requirement. Port Dock & Stone Corp. v. Oldcastle Ne., Inc., 507 F.3d 117, 121 (2d Cir. 2007); N. Y. Medscan LLC, 430 F. Supp.2d at 145-46.

**B.	Antitrust Standing**

Plaintiff's Amended Complaint alleges harm to two markets: hatching eggs market and the freight forwarding of hatching eggs market. (Pl. Mem. at 13.) Omni Defendants argue that Plaintiff, a freight forwarder, does not have standing to assert antitrust claims relating to the market for the production and sale of hatching eggs. (Omni Mem. at 15-16.) Plaintiff argues that it has standing to raise claims relating to the market for hatching eggs because it has been injured by Defendants' actions in that market.[8] (See Pl. Mem. at 13-14.)

It is well-settled that private plaintiffs bringing antitrust claims must show more than the fact that the defendants' conduct caused them injury—they must also show antitrust standing. Balaklaw v. Lovell, 14 F.3d 793, 797 n.9 (2d Cir. 1994). The factors relevant to a determination of whether the plaintiff has antitrust standing are: (1) injury in fact to plaintiff's business or property; (2) that is not remote from or duplicative of that sustained by a more directly injured

---

[8]	Specifically, Plaintiff argues that it was injured by: (1) the agreement between Morris and Omni, which makes it more difficult for Plaintiff to obtain customers; and (2) Defendants' actions—notably, the email sent to Plaintiff's contacts—that have made it more difficult for Plaintiff to book transportation because cargo owners refuse to work with Plaintiff. (Pl. Mem. at 14.) According to Plaintiff, "[a]s a new market entrant trying to break into the relevant product market it is difficult to imagine a plaintiff that has been more harmed than [it has]." (Id.) Although Plaintiff does not clarify, this statement must refer to the market of freight forwarding of hatching eggs, the only market Plaintiff has tried to enter.

7

party; (3) that qualifies as an "antitrust injury"; and (4) that translates into reasonably quantifiable damages. Daniel v. Am. Bd. of Emergency Med., 428 F.3d 408, 437-48 (2d Cir. 2005) (citations omitted).

Generally, a plaintiff that is "neither a consumer nor a competitor in the market in which trade was restrained" does not have standing to allege an antitrust injury to that market. George Haug Co., Inc. v. Rolls Royce Motor Cars, Inc., 148 F.3d 136, 140 (2d Cir. 1998) (quoting Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters, 459 U.S. 519, 539 (1983)). Plaintiff, a freight forwarder, is not directly impacted by the agreement between Morris and Omni. A purchaser of hatching eggs that is required to use Omni's services would have a more direct injury and would be a more "efficient enforcer" of the alleged antitrust violation. Daniel, 428 F.3d at 443-44.

In raising a claim of harm to the hatching eggs market, Plaintiff seeks only to vindicate its own monetary losses. (Am. Compl. at 16.) Therefore, awarding the requested relief to Plaintiff would in no way address or remedy the violation for those actually competing in the hatching eggs market. This indicates that Plaintiff has not suffered an antitrust injury, but has merely suffered damages. Cf. Id. at 440 (noting that the narrow scope of plaintiffs' requested injunctive relief would not address the alleged violation and concluding that this indicated that they had not suffered an antitrust injury). Therefore, Plaintiff has no standing to assert antitrust injuries suffered in the hatching egg market.

**C.     Analysis**

Plaintiff presents three different legal theories for how Defendants' conduct violates antitrust law: (1) that the agreement between Omni and Morris is an illegal agreement that restrains trade, that Omni has used the advantages it has gained from this agreement to squeeze

8

competition out of the market, and that such activity constitutes a per se violation of Section 1 of the Sherman Act (the "per se violation claim") (see Am. Compl. ¶¶ 78-92); (2) that Omni Defendants' email to cargo shippers, and the shippers' subsequent increase in rates for other freight forwarders (including Plaintiff), constitutes an agreement unreasonably restraining trade violating Section 1 under a rule of reason/vertical restraint[9] theory (the "rule of reason claim") (see id. ¶¶ 93-101); (3) that Omni has taken steps to acquire a monopoly of the relevant product market raise prices in the market (the "monopoly claim") (see id. ¶¶ 102-08).

           *1.      Plaintiff's per se violation claim*

Plaintiff's Amended Complaint alleges per se violations in: (1) the agreement between Omni and Morris, and (2) the agreements between Omni and other cargo shippers to raise prices for shipping. (See id. ¶¶ 78-92.) Plaintiff also argues that it has alleged elements of several different recognized per se violations, and thus has sufficiently alleged a per se violation. (Id. ¶ 9.) Omni Defendants argue that Plaintiff's per se claim must be dismissed because Plaintiff has not pleaded activity that falls within a category that courts consider to be per se violations of Section 1. (See Omni Mem. at 5-9.)

Section 1 of the Sherman Act prohibits "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States." 15 U.S.C. § 1. Alleging a violation of Section 1 generally requires demonstrating "a combination or other form of concerted action between two legally distinct entities resulting in an unreasonable restraint on trade." E&L Consulting, Ltd., 472 F.3d at 29. Most Section 1 claims are analyzed under the "rule of reason," which requires a court to decide whether the alleged illegal practice "imposes an unreasonable restraint on competition, taking into account a

---

[9]     Horizontal restraints are those imposed by agreements between competitors, whereas vertical restraints are those imposed by agreement between entities at different levels of the supply chain. E&L Consulting, Ltd. v. Doman Industries Ltd., 472 F.3d 23, 29 n.4 (2d Cir. 2006).

9

variety of factors." State Oil Co. v. Khan, 522 U.S. 3, 10 (1997). However, some categories of restraints are "necessarily illegal" and thus a court "need not study the reasonableness of an individual restraint in light of the real market forces at work." Leegin Creative Leather Prods., Inc. v. PSKS, Inc., 551 U.S 877, 886-87 (2007). This is sometimes called the "per se rule." Id. The per se rule must only be applied when the type of restraint at issue is one with which courts have had considerable experience so that they can predict with confidence that the restraint would be invalidated in all or almost all instances under the rule of reason. Id. (citations omitted). Application of the per se rule must be based on "demonstrable economic effect." Cont'l T.V., Inc. v. GTE Sylvania Inc., 433 U.S. 36, 50-51 (1977).

Plaintiff argues that it has invoked the per se rule by alleging a tying agreement[10] between Omni and Morris. (Pl. Mem. at 9.) Omni and Morris are not competitors—Omni provides a service for Morris, a producer. (See Am. Compl. ¶¶ 25-28.) Thus, any restrictive agreement between them is a vertical restraint. Under current precedent, vertical restraints are analyzed under the rule of reason.[11] Leegin, 551 U.S. at 907. Moreover, outside of Plaintiff's

---

[10] Plaintiff mischaracterizes the agreement between Omni and Morris by calling it a tying agreement. A tying agreement is "an agreement by a party to sell one product but only on the condition that the buyer also purchase a different (or tied) product." E & L Consulting, 472 F.3d at 31. To show a tying agreement, a plaintiff must demonstrate: (1) a tying and a tied product; (2) evidence of actual coercion by the seller that forced the buyer to accept the tied product; (3) sufficient economic power in the tying product market to coerce purchaser acceptance of the tied product; (4) anticompetitive effects in the tied market; and (5) the involvement of a not insubstantial amount of interstate commerce in the tied market. Id. "The essential characteristic of an invalid tying arrangement lies in the seller's exploitation of its control over the tying product to force the buyer into the purchase of a tied product that the buyer either did not want at all, or might have preferred to purchase elsewhere on different terms." De Jesus v. Sears, Roebuck & Co., Inc., 87 F.3d 65, 70 (2d Cir. 1996). Purchasers of hatching eggs from Morris are not forced to buy an additional product, but are required to use the services of a particular freight forwarder. However, even putting aside Plaintiff's mischaracterization of the agreement, the vertical agreement between Omni and Morris fails to fall under the per se rule.

[11] Vertical restraints that do not involve price restraints have always fallen outside the per se rule. Continental T.V., 433 U.S. at 58 ("When anticompetitive effects are shown to result from particular vertical restrictions they can be adequately policed under the rule of reason . . . ."). Vertical restraints involving price fixing used to be considered per se violations. See, e.g., id. at 51 n.18. But this is no longer the case. See Leegin, 551 U.S. at 907 (overruling prior precedent to hold that "[v]ertical price restraints are to be judged according to the rule of reason").

10

conclusory allegations that prices have been impacted, the economic impact of the alleged agreements is far from clear. See id. at 890-900 (explaining the ways in which vertical restraints can have positive or negative effects on competition). Therefore, the vertical restraint Plaintiff alleges between Omni and Morris does not fall under the per se rule.

Plaintiff also argues that it has invoked the per se rule by alleging a group boycott between Omni and the cargo shippers. (Pl. Mem. at 7-9.) In order to invoke a per se rule against group boycotts, a plaintiff must allege a horizontal agreement among direct competitors. NYNEX Corp. v. Discon, Inc., 525 U.S. 128 (1998) ("[P]recedent limits the per se rule in the boycott context to cases involving horizontal agreements among direct competitors . . . ."). Here, Omni does not directly compete with the cargo shippers, but arranges for use of their services. (Am. Compl. ¶ 24 ("The business of [Plaintiff] and Omni is to negotiate with airlines favorable rates on behalf of their customers to ship products worldwide.").) Therefore, an agreement between Omni and the cargo shippers is not a horizontal agreement among competitors, and cannot be considered a group boycott.

To the extent that Plaintiff argues it has alleged a horizontal agreement or group boycott between Omni and DelEx, the Amended Complaint does not have enough factual matter to suggest that an agreement was made. Cf. Twombly, 550 U.S. at 556-57 (requiring more than mere allegations of parallel legal actions to plausibly suggest an illegal agreement). According to the Amended Complaint, DelEx was Omni Defendants' "New York agent," (Am. Compl. ¶ 4.), and there is no allegation that Omni and DelEx had any agreement. Indeed, the only fact relating to DelEx is that Khodov forwarded the email sent by Alberty. (Id. ¶¶ 48, 54.) These scant allegations fall short of allowing a reasonable inference that DelEx and Omni had a horizontal agreement to restrain trade.

11

In sum, because Plaintiff has failed to allege an antitrust claim that falls under the per se rule, Plaintiff's per se claim must be dismissed.[12]

### 2. *Plaintiff's rule of reason claim*

Plaintiff alleges that Defendants' actions are illegal under a rule of reason analysis of Section 1 because they have "illegally restrained trade," and "prices have been adversely affected, are artificially high and competitors have been prevented from entering the relevant market." (See id. ¶¶ 93-101.) Omni Defendants argue that Plaintiffs' rule of reason claim must be dismissed because Plaintiff failed to plead an actual adverse effect on competition in the relevant product market. (Omni Mem. 10-13.)

The rule of reason is so-called because it requires a court to analyze a Section 1 claim by determining whether the alleged restraint is "unreasonable because its anticompetitive effects outweigh its procompetitive effects." E & L Consulting, Ltd., 472 F.3d at 29 (citation omitted). Under the rule of reason analysis, however, a plaintiff is obligated to "demonstrate, as a threshold matter, 'that the challenged action has had an *actual* adverse effect on competition as a whole in the relevant market.'" George Haug Co., 148 F.3d at 139 (quoting Capital Imaging v. Mohawk Valley Med. Assoc., 996 F.2d 537, 543 (2d Cir. 1993)) (emphasis in original). The fact that a plaintiff has been harmed as an individual competitor will not suffice. Id. This threshold requirement safeguards the principle that antitrust laws were enacted for the protection of *competition*, not *competitors*. Habitat, Ltd. v. The Art of Muse, Inc., No. 07-CV-2883 (DRH), 2009 WL 803380, *4 (E.D.N.Y. Mar. 25, 2009) (citations omitted) (emphasis in original).

---

[12] Plaintiff also argues that the per se rule applies because the violation it pleads has "elements" from per se violations, including horizontal price fixing, horizontal market divisions, concerted refusals to deal, and unlawful tying agreements. (Pl. Mem. at 8.) Plaintiff provides no precedent for recognition of such an anomalous violation. Moreover, there is no evidence that the alleged violation would allow the court to predict with confidence that the restraint would be invalidated under the rule of reason, as is required for application of the per se rule. See Leegin 551 U.S. at 886-87. Plaintiff's argument indicates a misunderstanding of the per se rule.

Plaintiff alleges that Defendants' antitrust violations have harmed two markets: "[t]he first injured market is the hatching egg market and the second is the transportation of hatching eggs market." (Pl. Mem. at 13.) As discussed above, Plaintiff does not have standing to allege antitrust injury to the egg hatching market. See George Haug Co., 148 F.3d at 139.

According to Plaintiff, the harm to the freight forwarding of hatching eggs market is evidenced by the fact that Omni maintains 75% of the market, and that as a result Omni has been able to raise prices for the shipping of hatching eggs and take steps to keep other competitors out of the market. (Id. ¶¶ 26, 31). Plaintiff makes conclusory allegations that Omni accomplished its position through "unlawful combination, conspiracy and deceitful practices to restrain and monopolize interstate trade and commerce," and Defendants' actions "have had a substantial, actual, adverse and unreasonable effect on competition as a whole" and "do not have any pro-competitive redeeming virtues." (Id. ¶¶ 30, 97-98.) After removing such allegations, however, the remaining facts demonstrate merely that: (1) there have been two recent incidents wherein shippers raised prices on Plaintiff or refused to do business with it; (2) Omni sent an email that harmed Plaintiff's reputation and caused it to lose business; (3) Morris and Omni have a vertical agreement that Morris customers will use Omni's services; and (4) Omni has a large share of the market (Id. ¶¶ 31, 36-45, 93-101.) These factual allegations are insufficient to demonstrate harm to competition.

Cargo shippers raising prices on Plaintiff does not establish injury to competition on the market.[13] George Haug Co., 148 F.3d at 139. Plaintiff also alleges that, as a result of Omni's email, cargo shippers "stopped accepting Hatching Eggs cargo from freight forwarders other

---

[13] Plaintiff alleges that as a result of Defendants' antitrust violations, its business has been harmed to the tune of $1 million (before trebling damages). (See Am. Compl.) Harm to Plaintiff as an individual competitor, however, does not suffice to establish antitrust injury under the Sherman Act. George Haug Co., 148 F.3d at 139.

13

than Omni." (Am. Compl. ¶¶ 94-95.) Plaintiff argues that this, along with Omni's email, sufficiently alleges harm to the market. (Pl. Mem. at 12.) The full text of the email clearly indicates that the subjects of the email are Plaintiff and Eggsbyair, Plaintiff's trade name entity. (Am. Compl. ¶ 47.) The email's stated purpose was "to advise each of [the recipients] about the two companies mentioned above." (Id.) Accordingly, the court finds it wholly implausible that because of this email regarding Plaintiff, cargo shippers would cease doing business with the other freight forwarders in the market, which are not named or mentioned in the email. These facts do not give rise to a reasonable inference that the market was injured by Omni's email.

The fact that Omni harmed Plaintiff's business by giving information—whether truthful or not—that caused cargo shippers not to deal with Plaintiff does not establish harm to competition in the marketplace. A defendant's alleged inducement to prevent dealings with one of its competitors—even if it may amount to tortious conduct—does not establish that the defendant's conduct is anticompetitive in purpose or effect. See Oreck Corp. v. Whirlpool Corp., 579 F.2d 126, 133-34 (2d Cir. 1978) (concluding that, without further showing of anticompetitive effect, a competitor's alleged tortious interference with plaintiff's business did not amount to an antitrust violation). If the court were to allow Plaintiff's claim for relief based on these facts to continue, it would disregard the purpose of federal antitrust laws by protecting an individual competitor, rather than protecting competition. Id.

Plaintiff also argues that it could successfully plead a rule of reason claim by alleging that Defendants possess market power in the relevant market, as demonstrated through Omni's 75% control of the market. (Pl. Mem. at 11 (citing Tops Mkts., Inc. v. Quality Mkts., Inc., 142 F.3d 90 (2d Cir. 1998); Wellnx Life Scis. Inc. v. Iovate Health Scis. Research Inc., 516 F. Supp. 2d 270 (S.D.N.Y. 2007)).) Plaintiff's allegation that Omni has 75% of the relevant market is not itself a sufficient showing of market power to discharge the requirement that Plaintiff show harm to the market. Tops Mkts., 142 F.3d at 97 ("A plaintiff seeking to use market power as a proxy for adverse effect must show market power, plus some other ground for believing that the challenged behavior could harm competition in the market . . . ."); Wellnx Life Scis., 516 F. Supp. 2d at 294 (dismissing a plaintiff's complaint for failure to state a claim where the plaintiff demonstrated market share but no other ground for believing that the challenged behavior could harm the market). Here, besides Plaintiff's conclusory allegations of harm to the market, there is no other ground to believe that Omni's market share constitutes market power.

Besides Plaintiff and Omni, there are four other freight forwarders in the market. (Am. Compl. ¶ 26.) Even though Plaintiff alleges that customers of Morris are "forced" to use Omni's services (id. ¶ 31), there are no facts in the Amended Complaint suggesting that these purchasers are not free to simply choose another hatching eggs provider, and thus use a competing freight forwarder. In other words, nothing in the Amended Complaint suggests that Omni had market power such that it could unilaterally raise prices for freight forwarding to supracompetitive levels without losing its business. See Wellnx Life Scis., 516 F. Supp. 2d at 294. Therefore, Plaintiff has not made a market power showing sufficient to discharge its obligation to show harm to the competition in the market. See Top Mkts., Inc., 142 F.3d at 97.

15

After disregarding Plaintiff's conclusory allegations of injury to the freight forwarding market, Plaintiff's factual allegations fail to provide a basis for the court to reasonably infer that there was an injury to competition in the market. Accordingly Plaintiff's rule of reason claim must be dismissed.

### 3. *Plaintiff's monopoly claim*

Plaintiff alleges that Defendants violated Section 2 of the Sherman Act, which provides that a person shall not "monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize . . . ." 15 U.S.C. § 2. A monopoly claim, just as a rule of reason claim, must show harm to competition in the relevant market.[14] Elecs. Commc'ns Corp. v. Toshiba Am. Consumer Prods., Inc., 129 F.3d 240, 246 (2d Cir. 1997); see also Habitat, 2009 WL 803380, at *10. As discussed above, Plaintiff fails to allege harm to competition in the freight forwarding market resulting from Defendants' actions. Therefore, Plaintiff's monopoly claim is dismissed.

### 4. *Leave to amend*

Plaintiff has not moved for leave to amend its antitrust claims in the event that the court finds them lacking, and has already amended its Complaint once before. Thus, it is within the court's discretion to dismiss Plaintiff's claims without giving it leave to amend its complaint to cure the pleading defects. Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1132 (2d Cir. 1994).

Even if Plaintiff indicated that it had additional facts it could allege to cure its pleading deficiencies, the court concludes that amendment would be futile. In addition to the numerous specific pleading failures explained above, the actual factual occurrences Plaintiff complains

---

[14] According to Plaintiff, it need only show "probability of substantial competitive injury" and need not prove actual injury. (Pl. Mem. at 11.) Plaintiff's contention is incorrect. George Haug Co., 148 F.3d at 139 (explaining that "[a] private plaintiff seeking to state a claim for violation of sections 1 or 2 of the Sherman Act must allege that it has suffered 'antitrust injury'" which obligates a plaintiff to show that the challenged action has had "an actual adverse effect on competition as a whole in the relevant marketplace").

of—namely, the email from Omni to cargo shippers—are simply not the type of activities that antitrust laws prohibit. See Oreck Corp., 579 F.2d at 133-34; see also Habitat, 2009 WL 803380, at *10. Accordingly, the court declines to give Plaintiff leave to amend its federal antitrust claims, and they are dismissed with prejudice.

### III. PLAINTIFF'S REMAINING CLAIMS

Omni Defendants move the court to dismiss Plaintiff's federal antitrust claims for failure to state a claim, and to dismiss the remaining state law claims for lack of subject matter jurisdiction. (See Omni Mot. to Dismiss.) Plaintiff's Amended Complaint pleads that this court has original subject matter jurisdiction over the federal antitrust claims and supplemental jurisdiction over the remaining state law claims of defamation, tortious interference, and civil conspiracy. (Am. Compl. ¶¶ 9-12 (citing 28 U.S.C. §§ 1331, 1337(a)).) Because the court has dismissed all of the claims over which it had original jurisdiction and the resolution of the state law claims would require resolving additional legal and factual issues, it declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims.[15] See 28 U.S.C. § 1367(a)-(c); N.Y. Mercantile Exch., Inc. v. IntercontinentalExchange, Inc., 497 F.3d 109, 119 (2d Cir. 2007) ("In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well."). Accordingly, Plaintiff's state law claims of defamation, tortious interference, and civil conspiracy are dismissed without prejudice.

### IV. CONCLUSION

For the reasons explained above, Plaintiff's federal antitrust claims fail as a matter of law and are DISMISSED with prejudice. The court declines to exercise supplemental jurisdiction

---

[15] There is no diversity between the Plaintiff and Defendants (see Am. Compl. ¶¶ 1-4), and thus the court does not have diversity jurisdiction over these claims under 28 U.S.C. § 1332.

over Plaintiff's remaining state law claims, and they are DISMISSED without prejudice. The Clerk of the Court is directed to close this case.

    SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York               NICHOLAS G. GARAUFIS
      December 16, 2012                  United States District Judge